Rosa Maggio Taormina, Executrix under the Last Will and Testament of Calogero Taormina, Deceased, and Samuel Miles Fink, Ancillary Administrator of the Estate of Calogero Taormina, Deceased,

Plaintiffs,

<em>vs.</em>

Taormina Corporation, a corporation of the State of Delaware, Eustachio A. Taormina, Madeline Mule Taormina, Madeline Mule Taormina, guardian for Rosalie Jane Taormina, Frank Culicchia, Mary Taormina, Mary Taormina, Usufructuary for Rose, Anthony F., Mary Ella and Josephine Taormina, Anthony F. Taormina, Charles A. Messina, individually and as co-partners trading under the firm name of Taormina Company,

Defendants.

Rosali Maria Agnes Taormina Compagno,<br>Intervener.

<em>New Castle, November 24, 1954.</em>

*James L. Latchum,* of Berl, Potter & Anderson, Wilmington, and *Samuel Miles Fink,* New York City, for plaintiffs.

*Josiah Marvel, Jr.,* of Logan, Marvel, Boggs & Theisen, Wilmington, and *W. W. Young,* of Terriberry, Young, Rault & Carroll, New Orleans, La., for intervener.

SEITZ, Chancellor: While this case is now before the Court for the entry of a decree of distribution of the personal assets of the estate of Calogero Taormina (called "Taormina" or "decedent") located in Delaware, the question to be determined is the law governing such distribution.

The parties are in agreement that the following statement of legal principles found in a previous opinion of the preceding Chancellor in *Taormina v. Taormina Corp.,* 32 *Del.Ch.* 18, 78 *A.2d* 473, 477, ac-

curately reflects the Delaware law governing the ascertainment of domicile:

> "The question of domicile is one of law based on fact. The acquirement of a new domicile and the abandonment of an old depends upon the acquisition of a dwelling place with the intention to make that place home. There must be an actual abandonment of the former domicile and the acquisition of a new dwelling place with the intention to make that home in order to acquire a new domicile. The mere absence from one's place of residence for a long period of time on business, pleasure, reasons of health, or other special purposes will not result in the abandonment of a former domicile and the acquisition of a new one of choice. There must be some proof of other facts from which the necessary intent can be implied."

See also *New York Trust Co. v. Riley,* 24 *Del.Ch.* 354, 16 *A.2d* 772.

In order to apply the quoted law, it is necessary to narrate in some detail the course of Taormina's career for many years—a career filled with examples of the vicissitudes of life.

Taormina was born in Partanno, Italy on November 4, 1901. He immigrated to New Orleans, Louisiana, in 1920 and in 1924 married Maria Uddo. The intervener, Rosalie Compagno, was born of this marriage on November 4, 1924. Taormina's first wife died in 1925. The decedent continued to reside in New Orleans. But after the death of his wife, his daughter Rosalie, went to live with her maternal aunts and never thereafter lived with Taormina.

On May 9, 1929, Taormina became a naturalized citizen of the United States in a proceeding in Louisiana. In 1932, the decedent visited Italy and while there took unto himself another wife, Rosa Maggio. He returned to the United States in September 1932. In late 1932 he and the new Mrs. Taormina went to live in Donna, Texas where he worked for the Uddo-Taormina Corporation. He and his wife furnished a rented home in Donna and it was there that their first child was born on April 29, 1933. Taormina suffered a heart attack on July 27, 1933 and shortly thereafter the decedent

and his family visited New Orleans to have an opportunity for medical treatment. During the first part of this period, they were guests of their relatives and did not pay any rent. Thereafter, Taormina and his wife rented a cottage in New Orleans for a short period. This was done to avoid further inconvenience to the family with whom they were staying. While in New Orleans their home in Donna, Texas was destroyed by a cyclone. Taormina's brother salvaged a few pieces of their furniture and shipped them to the decedent in New Orleans. Taormina did not work during this period in New Orleans.

Upon the advice of Taormina's New Orleans physician that the climate and the condition of the Gulf Coast were imperative for his well being, the decedent and his family moved to Gulfport, Mississippi. They there rented a home which in part was furnished with the furniture salvaged at Donna, Texas. Taormina and his wife lived in Gulfport from February 1934 until December 1935. Decedent's car was licensed in Mississippi. Also, he and his wife maintained a joint bank account from 1934 to 1936 in a Gulfport bank. He did not work during this period.

In July 1934, Taormina became the client of a Gulfport attorney and he engaged that attorney to prepare a power of attorney for him stating at the time that he was a resident citizen of Gulfport. On November 25, 1935, he employed the same attorney to draft a will wherein he recited that he was "a resident citizen of Harrison County, Mississippi * * *".

However, Taormina's federal income tax returns for 1933, 1934, and 1935 were filed in New Orleans. The addresses of his returns were listed as being in New Orleans but they were all addresses of his relatives or the firm of which he was a stockholder.

While living in Gulfport, Taormina frequently visited his relatives in New Orleans. The home offices of his company were also in New Orleans which was about sixty miles from Gulfport. New Orleans is the largest city in the vicinity.

Taormina's remarriage caused a strained relationship to develop with his first wife's family. It was the source of a series of legal

skirmishes in Louisiana and in one such action on December 24, 1934, Frank Uddo, on the present intervener's behalf, petitioned for his appointment as her curator *ad hoc*. It was alleged therein that Taormina was a resident of Gulfport, Mississippi. On the same date an action was started against Taormina for the intervener's support and it was again alleged that Taormina was a non-resident of Louisiana. During the same period in 1934, Taormina described himself, under oath, in a certain litigation in New Orleans as a "resident of the city of Gulfport, State of Mississippi". This was in connection with his petition for letters on his first wife's estate. The curator *ad hoc,* on behalf of the intervener here, opposed the petition on the ground that the decedent was a non-resident of Louisiana.

On September 6, 1935, the Louisiana litigation was terminated by an inter vivos agreement by which the intervener received some $15,000 and released Taormina of all rights in connection with her support, maintenance, and education. Thus the issue of "domicile" was never judicially resolved in those proceedings.

On September 19, 1935, decedent applied for a passport to Italy which was issued on September 25, 1935. In that application Taormina declared under oath that he was "domiciled in the United States, my permanent residence being at 5002 West Beach in the city of Gulfport, State of Mississippi". He further stated that he was retired and desired to travel for his health.

In December 1935, the decedent and his family left Gulfport for New York on their way to Italy. Intervener says that the decedent had that intention even before he moved to Gulfport from New Orleans, but I find such evidence unconvincing. From Christmas of 1935 to May 1936, the Taorminas visited Mrs. Taormina's brother in Brooklyn, New York. A second child was born during their stay in Brooklyn.

Certain testimony was taken from which it appears that Taormina stated that he was going to Italy for the purpose of "building himself up" and for a rest and that he intended to return. Indeed, he so stated himself in his passport application. In view of my ultimate conclusion, it is unnecessary to evaluate this evidence.

On May 2, 1936, the Taorminas and their children sailed for Italy. They established a temporary residence in Partanno, Italy, upon a property Mrs. Taormina inherited from her family. The decedent and his wife were still in Italy in 1939 when World War II began. In 1939, he was drafted for military service in the Italian Army. He failed to report for duty and was indicted. He then reported for military service on June 21, 1939. Three days later he was found fit for sedentary duty only. In early 1940, he was discharged. The decedent was forced to remain in Italy during the war. During that period two other children were born.

On February 2, 1946, the decedent made what plaintiffs call an application for a United States passport but which I find to be a declaration of United States citizenship. He declared therein, under oath, that he intended "to return thereto [United States] as soon as possible". He also declared that he resided continuously at New Orleans, Louisiana from 1920 to 1936. This statement is of course patently inaccurate in part.

He died in Italy on April 8, 1946. Thereafter on July 4, 1950, the United States Vice Consul at Palermo, Italy conducted an investigation and rendered a "Report of the death of an American citizen." The consulate determined in effect that for their purposes the decedent died a citizen of the United States despite his short military service in the Italian Army. They concluded that he had not taken any oath of allegiance to Italy. The Italian authorities recognized decedent's will as a proper testamentary disposition on the basis that he was an American citizen and that the decedent's estate was not subject to the Italian "forced heirship" provisions which are applicable only to estates of Italian nationals. His death certificate recites that he died domiciled in Partanno, Italy.

It is out of this narrative that the court must decide the issues presented. Plaintiffs make three contentions:

1. They say that the facts affirmatively demonstrate that the decedent was domiciled in Mississippi at death and accordingly his Delaware assets should be distributed under his Mississippi will.

2. They say that even assuming the decedent was domiciled in Italy at death, the court must take one of two approaches:

(a) It must refer to the whole Italian law which provides that the estate of a non-Italian national is governed by the laws of the decedent's nationality. When this is done the court is irrevocably referred by Italian law, on the renvoi principles, to the laws of Mississippi.

(b) The court being referred to Italian law, sits as an Italian court and as such will refuse to recognize intervener's claim based on the forced heirship provisions of the Italian law because those provisions only apply to estates of Italian nationals and not to the estates of foreign nationals.

3. They say that assuming the decedent was domiciled in Louisiana at death, the succession laws of that state do not give the intervener any interest in the Delaware assets until she "collates" the $15,000 received by her from the decedent during his lifetime.

The intervener makes the following contentions:

1. The decision of this court in *Taormina v. Taormina Corp.*, 32 *Del.Ch.* 18, 78 *A.2d* 473 that the decedent was not an Italian domiciliary was not binding on this intervener because she was not then a party to the proceeding.

2. Taormina died domiciled either in Italy or Louisiana.

(a) If the Italian law applies, the decedent could freely dispose by will of only one-third of his estate.

(b) If Louisiana law applies, either the will falls because of children born after its date or, alternatively, Taormina could not disinherit his child, the intervener.

[1, 2] This court commences its analysis by applying the following binding statement of legal principles to the facts, *New York Trust v. Riley*, above [24 *Del.Ch.* 354, 16 *A.2d* 785], Supreme Court of Delaware:

> "It is a fundamental proposition that one whose right to relief depends on the establishment of the domicile of another at

a given place has cast on him the onus of proof. This burden never shifts, although, from time to time, the duty of going forward with the evidence may shift from the one party to the other. The fact of actual residence in a place is prima facie evidence of domicile there; and in the absence of explanatory evidence, the conclusion would be justified that the place of residence is the domicile of the person there resident. Upon proof of residence, explanation is demanded. The explanation may, or may not, be satisfactory. But, nevertheless, the party asserting and relying on a change of domicile sustains the burden of proving the change by a fair preponderance of the evidence."

It seems to the court that the most logical way to approach this decision is to commence with the last agreed domicile for Taormina and then attempt to determine whether, in the light of the evidence and the applicable rules of law, he later established any other domicile.

I believe it is agreed that Taormina was domiciled in New Orleans, Louisiana, in 1932, where he had been domiciled since he came to America. In late 1932, Taormina and his wife moved to Donna, Texas, to work in a cannery there operated by Uddo-Taormina Corporation, of which he later became a stockholder. He and his wife established a furnished home there and a child was born there.

The intervener contends that the decedent never established a Texas domicile and thus retained his Louisiana domicile. The intervener emphasizes the fact that the decedent lived in Texas only for about seven months. But this cannot be of great significance since he presumably went there to live for an indefinite period and admittedly left there only because of his illness. I conclude that the facts justify the inference that the decedent established a domicile in Donna, Texas. He went there to live and to work. So far as is shown his stay was to be indefinite and he then had no home in New Orleans.

In July 1933, Taormina had a heart attack which required him to go to New Orleans for treatment by heart specialists. When Taormina returned to Louisiana for treatment he lived with his relatives without paying rent but continued to pay rent on his furnished

Texas home. It was during this period that a cyclone destroyed his home in Texas and that his brother, without the decedent's request, shipped the balance of his furniture to New Orleans.

After a while the decedent and his wife rented a cottage in New Orleans and used the furniture received from Texas. He lived in this cottage only a few months and then moved in early 1934 to Gulfport, Mississippi.

The decedent's return to New Orleans was solely for the purpose of receiving medical attention. Intervener says that, at least, Taormina re-established his Louisiana domicile. I conclude that the finding of a continuing domicile in Texas, during his stay in New Orleans, is as warranted by the evidence as a finding of a change back to Louisiana. In any event, when the decedent moved to Gulfport, Mississippi at his doctor's direction, it is apparent to me, from subsequent events, that a finding of a domicile in Gulfport, Mississippi is fully supported by the evidence even though he went there for his health. I say this because he and his wife established living quarters in Gulfport and remained there over a year. During this time he rented a home, moved his furniture there, licensed his automobile in Mississippi, maintained a bank account there, engaged an attorney there to prepare a power of attorney in which he declared himself to be a resident citizen of Gulfport and later on drew a will in which he declared himself to be a resident citizen of Mississippi and expressly provided that his estate should be distributed in accordance with the laws of Mississippi. When he applied for his passport he made a similar claim concerning Mississippi.

But intervener points to the fact that, during the same time, he filed tax returns in Louisiana in which he gave a New Orleans, Louisiana, address each time. This is true but it was never his own address. He also opened an account in a New Orleans bank on October 25, 1935. This is a fact but in and of itself cannot overcome the other facts pointing to Mississippi, particularly the decedent's own statements. I say this realizing that statements are not always as persuasive as actions.

I therefore conclude that Taormina became domiciled in Mississippi. My conclusion is based on his concurrent physical presence

in Mississippi, plus the clear evidence of his intention to make that place his home at least for an indefinite period. As before stated, I am not impressed by the testimony of one witness that, even before moving to Mississippi, Taormina entertained the intention of going to Italy.

Intervener says that in any event Taormina became domiciled in Italy after he left this country in 1936. But plaintiffs say that even if this is true, which they deny, it does not help the intervener because, under Italian law, the estate of a non-Italian would be distributed in accordance with the law of his nationality. Consequently, say plaintiffs, even if we assume that the decedent was domiciled in Italy at the time of his death, his estate would be distributed according to American law because he was an American national at that time. Since I have decided that Mississippi was his last American domicile, it would follow that the Mississippi law would be applied which would mean that his Delaware assets would pass under the will.

■ I conclude that Taormina never became an Italian national. His brief military service was under coercion and the unrebutted reasonable inference is that he did not take an oath to support the Italian government. And see *Ozasa v. Acheson, D.C., 94 F.Supp.* 436. In 1946, he registered in Italy as an American citizen. Apparently the State Department took the position that his service in the Italian Army did not work a forfeiture of his American citizenship. The fact that his death certificate lists him as domiciled in Italy is therefore of no significance.

■ When an American court is presented with a problem of the present character, I assume, as have the parties, that it is appropriate to consider what an Italian Court would do in these circumstances. When a non-Italian national dies in Italy, whether or not he is there domiciled, the Italian Court will apply the principle of "renvoi" and refer the distribution of his estate to the law of the decedent's nationality (Article 23, Italian Civil Code). But the so-called renvoi endless chain dilemma is not here involved because under Italian law the foreign substantive law is applied regardless of renvoi (Article 30, Italian Civil Code). Thus the substantive law of Mississippi is applicable.

■ But, in any event, the "forced heirship" provisions of the Italian law apply only to estates of Italian nationals. See *In re Ross*, [1930] 1 *Ch*. 377. Since the decedent was not an Italian national, the intervener would not be entitled to invoke such provisions for her benefit.

■ Since I have concluded that the decedent's last American domicile was Mississippi, it follows that the present assets must be distributed under the will in accordance with the law of that state. And this is true whether or not the decedent was domiciled in Italy at the date of his death.

In view of my conclusions it does not become necessary to decide the other questions raised.

Order on notice.